IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00149-KLM

SLEEKEZ, LLC,

    Plaintiff,

 v.

EQUIGROOMER, LLC,

    Defendant.

---

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS**

---

  Plaintiff SleekEZ, LLC, through undersigned counsel, hereby submits its Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint (the "Motion").

  Defendant's Motion should be denied. This Court has personal jurisdiction over Defendant because it regularly sells infringing products bearing Plaintiff's trademarks to consumers in Colorado in the course of their business, and has established a place of business in Colorado for products that infringe upon Plaintiff's exclusive patent rights. Defendant further directs targeted and pay-per-click advertisements for the infringing products – using the coined term "SleekEZ" no less – to persuade consumers in Colorado to buy from Defendant.  The requirements for venue are likewise met.  Defendant has purposefully availed itself of the laws of the state of Colorado, has been properly served (despite failing to maintain a correct agent or address for service of process), and transferring this action is not in the balance of interests of the parties or the Court. For all these reasons, Plaintiff requests that the Motion be denied.

## I. INTRODUCTION

This case involving Defendant's willful trademark infringement (*see* Compl., ¶¶ 23-35, 57-61), false advertising (*id*., ¶¶ 36-45), unfair competition (*id*., ¶¶ 46-56) and patent infringement (id., ¶¶ 20-24). For at least the past eleven years, Plaintiff has marketed, promoted, offered for sale, sold and distributed animal grooming products especially marketed to the equine industry under the brand name "SleekEZ". *Id.*, ¶¶ 8-9, 17-18. During this long period of time, Plaintiff SleekEZ has expended significant time, money, and effort in cultivating a market for its novel products. Plaintiff has spent over a decade cultivating and achieving substantial good will in its brand, particularly in Colorado, where Plaintiff maintains and directs the majority of its business dealings. *See* Declaration of Jennifer Tipton ("Tipton Decl."), ¶¶ 3, 6, 9-11. "SleekEZ" is a coined term and, as such, is afforded considerable protection under Federal trademark laws, including the Lanham Act. *See* 15 U.S.C. § 1051 *et seq*. Through continuous and substantial use of the SleekEZ brand, and Plaintiff's considerable time, effort, money and other resources to promote and defend the same, the trademark SleekEZ has come to serve as a distinctive identifier of source of Plaintiff's grooming products. *See* Compl., ¶¶ 17, 26-27; Tipton Decl. ¶ 6.

Plaintiff has undertaken significant steps to protect its trademark rights at both the state and Federal levels, and owns a trademark registration for the mark "SLEEKEZ" embodied in U.S. Registration No. 4,913,415 having a first use date of February 1, 2011. Compl., ¶ 17, Ex. 5. Plaintiff further owns U.S. Registration No. 5,987,404 for "SleekEZ" with design. *Id*. The collective Federal and common law rights obtained through these efforts, including all associated goodwill, are hereinafter referred to as "the SleekEZ Mark."

2

Defendant began its business years after Plaintiff first introduced its grooming products to the equine market. Defendant competes with Plaintiff SleekEZ, including for the same products offered for sale and sold under the SleekEZ Mark. *Id*., ¶ 12. In the last couple years, Defendant has branded certain of its products using the leading term "Easy." *Id*., 17.[1] More recently, Defendant has utilized the coined term "SleekEZ" in metadata on its website and in advertisements as demonstrated from recent searches.[2] Defendant's website www.equigroomer.com incorporates the "Easy" mark in substantial portion on that website, as well as using an identical SleekEZ Mark embedded as metadata, presumably to direct consumers to Defendant's website even when they search for SleekEZ by name. *Id*. Additionally, Defendant maintains a nationwide network of distributors who provide the products accused of infringement in the Complaint, both through ecommerce and brick-and-mortar retail locations. Compl., ¶¶ 12, 14, 18-19; Walsworth Decl., ¶¶ 8-9, Exs. 4, 5. Defendant's use of the SleekEZ Mark for the same type of product has resulted in a likelihood of confusion, including within the State of Colorado. *See* Compl., ¶¶ 17, 30.

Defendant's efforts to advertise and promote the infringing products is not minimal, or geographically contained to the New England area. For example, search results obtained from www.google.com for Defendant's products reveal numerous paid advertisements and sponsored results, as well as links for consumers to directly purchase of the products accused of infringement in the above-captioned action. *See* Walsworth Decl., 8-9, Exs. 4, 5. These searches were

---

[1] Needless to say, Defendant's adoption of the mark "Easy" in connection with its animal grooming products is confusingly similar to Plaintiff's use of "EZ" in appearance, sound and meaning.

[2] *See* Declaration of Ian R. Walsworth ("Walsworth Decl."), ¶¶ 10, Ex. 6. There is no descriptive or generic use of the term SleekEZ that would excuse this practice under the fair use doctrine.

3

conducted from Colorado, and these results are the same results any ordinary Colorado consumer shopping for a grooming brush could and likely would find to either (1) locate one of the in-state retail distributors of the infringing products, or (2) directly purchase the infringing products online. These avenues include, but are not limited to:

- Ken Caryl Pet Shop ([www.kencarylpetshop.com](www.kencarylpetshop.com)) with two retail locations in Colorado;
- Happy Horse Tack & Saddle Shop ([www.happyhorsetack.com](www.happyhorsetack.com)) located in Colorado;
- Walmart;
- Amazon;
- eBay;
- Petstore.direct;
- Chewy.com;
- Revelationranchphs.com; and
- GistGear.com

*Id.* Alarmed by the use of Plaintiff's Federally-protected trademark in Defendant's website and consumer-directed advertising, and aware of the likelihood of consumer confusion resulting from the same, Plaintiff conducted an investigation of Defendant's products and discovered other conduct that infringes upon its exclusive rights. *See* Compl., ¶¶ 16-18. Plaintiff notified Defendant of its exclusive rights to the SleekEZ Mark by letter dated January 20, 2022. *See* Walsworth Decl., ¶ 2, Ex. 1. After receiving Defendant's response denying liability, SleekEZ served this action on Defendant for patent and trademark infringement, unfair competition and false advertising, among other claims. *See* Compl. ¶¶ 4, 20-61.

Plaintiff served the Complaint with the knowledge that Defendant's address and identified agent for service of process on record with the state of Connecticut were defective. *See* Walsworth Decl., ¶¶ 3-4. Therefore, SleekEZ conducted further research and uncovered Defendant was doing business in New Hampshire and served the Complaint under New Hampshire's laws. *Id.*, ¶¶ 5-6.

Once served, Defendant moved to dismiss based on lack of personal jurisdiction and venue, and alternatively seeks transfer to the District of Connecticut [ECF 13-1] (the "Motion"). For the reasons provided below, Defendant's Motion should be denied.

## II. ARGUMENT

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend Constitutional due process. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). The Colorado long-arm statute (Colo. Rev. Stat. § 13-1-124) confers the maximum jurisdiction permitted, such that the Court need only determine whether the exercise of jurisdiction comports with due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

This Court has specific personal jurisdiction if: (1) Defendants have sufficient "minimum contacts" with Colorado, and (2) Defendants do not present a "compelling case" that other considerations would make it unreasonable for this Court to exercise personal jurisdiction over them. *See Old Republic Ins. Co. v. Cont'l Motors, Inc*., 877 F.3d 895, 904 (10th Cir. 2017). In the early stages of a case, courts require a plaintiff to present "only . . . prima facie showing of personal jurisdiction to defeat [Rule 12(b)(2)] motion" when a court rules on a motion without an evidentiary hearing. *Id*. at 903 (internal quotation marks omitted)).

### A. This Court Has Personal Jurisdiction Over Defendant Because It Regularly Sells Infringing Products to Consumers in Colorado.

To satisfy part (1) of this two-part test, a plaintiff must show that (i) defendant has purposefully directed its activities at residents of the forum state, and that (ii) its injuries arise out of defendant's forum-related activities. *Id*. Courts in this circuit and around the country hold that

5

these standards are satisfied when: (1) the plaintiff is located in the forum state; (2) the out-of-state defendant is selling products that infringe the plaintiff's intellectual property; and (3) the defendant is selling infringing products to consumers in the forum state, including over the Internet. *See, e.g., Otter Prods., LLC v. Wang*, No. 18-cv-03198-CMA-SKC, 2019 U.S. Dist. LEXIS 52916, at *9 (D. Colo. Mar. 28, 2019) (personal jurisdiction over defendant that sold infringing products into Colorado through Amazon); *Leach v. Pharmedoc Inc.*, No. CIV-16-1034-M, 2017 U.S. Dist. LEXIS 33565, at *5-6 (W.D. Okla. Mar. 9, 2017) (personal jurisdiction because where defendant "was operating a commercial business through Amazon," its "internet-based activities established regular business with foreign jurisdictions, including [the forum state]," and it had sold "at least four, and likely more" infringing products to residents in the forum state) (emphasis added); *Cornice Techs., Inc. v. Affinity Dental Prods.*, No. 04-cv-01133-EWN-OES, 2005 U.S. Dist. LEXIS 45546, at *12-20 (D. Colo. July 21, 2005) ("A defendant's use of a web site to conduct business in the forum state, such as having a website that a customer in the forum state can access and purchase the infringing product, provides a basis for a court's exercise of personal jurisdiction.").

      Plaintiff is located in the state of Colorado for purposes of satisfying the standard articulated in *Otter Prods*. and *Cornice Techs*. Plaintiff's business documents and business advisory team is located in Colorado. Tipton Decl., ¶ 4. Plaintiff's trademark materials, including the prosecution history and Plaintiff's trademark counsel, Messrs. Ed Crabtree and Roman Pizzaro, are all located in Colorado. *Id*., ¶¶ 6, 10. The '250 Patent asserted in this action and all related prosecution and other historical documents relating to Plaintiff's invention are located in Denver, Colorado. *Id*., ¶ 5. Plaintiff, which has no brick and mortar locations of its own, sells through

twelve (12) different retail outlets located in Colorado. *Id*., ¶¶ 4, 9. Plaintiff has engaged in significant marketing, advertising and promotion and achieved substantial sales in Colorado. *Id*., ¶¶ 3, 11.

Defendant *admits* it has had significant sales of the infringing products in Colorado. *See* Motion, pp. 4-6. Notably, Defendant even relies upon a case where specific jurisdiction was found against a non-resident Defendant for selling *approximately 165 products* to consumers in Colorado. *Otter Prods., LLC v. Big Birds, LLC et al*., CIV-19-00626-DME-KLM, 2019 U.S. Dist. LEXIS 13102793, at *4 (D. Colo. Aug, 9, 2019). The Court specifically found that Plaintiffs "sufficiently alleged that Defendants have minimum contacts with Colorado and that [Plaintiffs'] claims arise from those contacts. This is sufficient to warrant this Court exercising specific personal jurisdiction over Defendants." *Id*. The Court found sales through Amazon (as opposed to sales shipped directly by defendants) to be enough, stating "[n]or does it matter that it is Amazon, and not Defendants, who ultimately ships the infringing goods Defendants sells in Colorado. *Id*., at *5-6 (citing *Leach*, No. CIV-16-1034-M, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017). Here, Defendant admits to both direct and Amazon sales, although has <u>not</u> attempted to quantify the extent of sales derived from Amazon (or other third party Internet sellers) and directed to Colorado. *See* Motion, p. 5, fn 2. Accordingly, Plaintiff has met its *prima facie* burden of establishing specific jurisdiction over Defendant.[3]

---

[3] *See also Exact Mktg. v. Unique Sports Prods.*, No. 2:18-cv-00193-DB, 2018 U.S. Dist. LEXIS 123316, at *5-7 (D. Utah July 23, 2018) (defendant subject to personal jurisdiction because it sold infringing products over the Internet to consumers in forum state); *Orbit Irrigation Prods. v. Melnor, Inc.*, No. 1:16-cv-137, 2017 U.S. Dist. LEXIS 51561, at *11-13 (D. Utah Apr. 3, 2017) (same); *Del Sol L.C. v. Caribongo, L.L.C.*, No. 2:11CV573DAK, 2012 U.S. Dist. LEXIS 20542, at *8-14 (D. Utah Feb. 17, 2012) (same); *A.I. Enters. v. Sebron*, No. 2:08CV536, 2008 U.S. Dist. (footnote continued)

Additional authority in this district supports a finding of personal jurisdiction. *See C5 Med. Werks v. CeramTec*, No. 14-cv-00643-RBJ, 2014 U.S. Dist. LEXIS 124989 (D. Colo. Sep. 8, 2014). In *C5 Med. Werks*, the court denied a motion to dismiss and found personal jurisdiction based upon the defendant's activity within the state on *at least three* occasions. *Id*. at *3-4, 11. In the present case, like in *C5 Med. Werks*, Defendant personally and purposefully directed correspondence to Colorado, including assertions of affirmative causes of action against Plaintiff. *See* Tipton Decl., ¶ 7; Part I, *supra*. Defendant admittedly has transacted business in Colorado on more than three occasions. *See* Motion, pp. 4-6. Defendant, including through third parties it does business with here, has used the infringing mark in the state and directed advertising to consumers located in Colorado. *See* Walsworth Decl., ¶ 8-10, Exs. 4-6.

The reasoning applied by these courts is that a defendant, by selling products through a commercial website, knowingly and deliberately reaches out beyond their home state to make contacts and therefore avails itself of the benefits of other states. *Stomp, Inc. v. Neato*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999). Courts have further announced the principle that "[s]ellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that

---

LEXIS 70177, at *5-6 (D. Utah Sep. 17, 2008) (same); *Rainy Day Books. Inc. v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158, 1163-66 (D. Kan. 2002) (same, and collecting cases); *Allstar Mktg Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1121-23 (C.D. Cal. 2009) (same, and collecting cases); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 757-58 (7th Cir. 2010) (same); *ADG Concerns, Inc. v. Tsalevich LLC*, No. 18-cv-00818-NC, 2018 U.S. Dist. LEXIS 155542, at *6 & n.4 (N.D. Cal. Aug. 31, 2018) (personal jurisdiction through Amazon sales); *Valtech, LLC v. 18th Ave. Toys, Ltd.*, No. 14 C 134, 2015 U.S. Dist. LEXIS 17138, at *8-15 (N.D. Ill. Feb. 12, 2015) (same).

such an expanded market may bring with it." *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006) (emphasis added).

Here, it is undisputed that Defendant has regularly sold significant amounts of infringing products into Colorado through the regular course of business. Defendant has long been on notice of the fact Plaintiff's claims arise out of Defendant's sales of infringing products into Colorado. (*see* Tipton Decl., ¶ 7) and through notices of Defendant's infringement of Plaintiff's exclusive rights in Colorado. *See* Compl., ¶¶ 4, 6, 10-11, 14, 17-19. These allegations unquestionably establish personal jurisdiction over Defendants under the cases cited above.

Defendants' arguments as to why their sales do not subject them to personal jurisdiction are without merit. First, Defendant argues only *de minimis sales* of infringing products to consumers in Colorado is not accurate or supported by the materials accompanying the Motion. *See, e.g.,* Motion, p. 4. The fact that Defendant may sell even more products through other distributors (than the two located in Colorado) does not somehow deprive the Court of jurisdiction, especially where Plaintiff has demonstrated purposeful, non-fortuitous activity directed towards Colorado. *See* Walsworth Decl., ¶¶ 8-10; Tipton Decl., ¶ 7. In sum, it matters not whether Defendant may also have minimum contacts in other districts so long as those contacts exist here in Colorado.

Defendant has also withheld sales that have been made to consumers in Colorado through Amazon despite the fact that Defendant has access to location-specific data through its Amazon account. *See* Motion, p. 5, fn 2. In the final analysis, even without critical sales data from Amazon and other third party Internet sellers, the 5+ years of retail sales made in Colorado and admitted to by Defendant are more than sufficient to establish specific jurisdiction where those same products

9

are at-issue in the complaint. *Leach*, 2017 U.S. Dist. LEXIS 33565, at *5-6; *C5 Med. Werks*, 2014 U.S. Dist. LEXIS 124989; *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

With respect to the withheld sales data from Amazon, any argument that Defendant's Internet sales into Colorado should not count toward establishing minimum contacts because their orders are "fulfilled" or "shipped" by Amazon is unavailing. Defendant, not Amazon, is the true seller of the infringing products. As such, those sales subject Defendant to jurisdiction in this Court regardless of who ships the products. *See Std. Process, Inc. v. KDealz Ltd. Co.*, No. 17-cv-909-jdp, 2018 U.S. Dist. LEXIS 102976, at *6-7 (E.D. Wis. June 20, 2018) ("[The bottom line is that [defendant] is in the business of selling [] products online to customers nationwide. The fact that it conducts that business through Amazon doesn't shield it from personal jurisdiction any more than shipping products via FedEx would."); *Leach*, 2017 U.S. Dist. LEXIS 33565, at *5 (concluding that defendant's sales fulfilled by Amazon "are properly attributed to defendant when determining whether it has purposefully directed its activities at Oklahoma residents"); *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458, 2012 U.S. Dist. LEXIS 78088, at *10-13 (E.D.N.Y. June 4, 2012) (sales gave rise to personal jurisdiction even though orders were fulfilled by Amazon). In fact, multiple recent decisions in this circuit and in the District of Utah held that online sales, including Amazon sales, were sufficient to establish jurisdiction. *See Exact Mktg*, 2018 U.S. Dist. LEXIS 123316, at *5-7; *Orbit Irrigation*, 2017 U.S. Dist. LEXIS 51561, at *11-13; *Leach*, 2017 U.S. Dist. LEXIS 33565, at *5. The Court should follow the majority of cases in the Tenth Circuit and elsewhere holding that sales of infringing products into Colorado—where Plaintiff is harmed—establish "minimum contacts" with Colorado sufficient to subject Defendant to personal jurisdiction in this Court.

### 1. Defendant Has Not Shown Jurisdiction is Unreasonable.

Turning to the purposeful direction, this requirement may be established (even without continuing relationships or market exploitation) when a non-resident's conduct targets and has a substantial harmful effect in the forum state. *Calder v. Jones*, 465 U.S. 783, 790-91 (1984). There is no doubt that Plaintiff has felt economic harm from defendant here in Colorado. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir. 1991); Tipton Decl., ¶¶ 7, 9, 11; Walsworth Decl., ¶¶ 7, 10. As with any trademark dispute, and particularly those involving a Federally-registered trademark, the nature of the harm caused by alleged infringement is to the trademark owner's reputation and goodwill nationwide. *See* 15 U.S.C. § 1057(c). Here, the harmful effects will be felt in Colorado where a substantial part of Plaintiff's business is conducted, its documents maintained, a dozen retail distributors are located and its patent and trademark files reside. *See* Tipton Decl., ¶¶ 3-6, 9.

Defendant has not shown that it would be constitutionally unreasonable for this Court to exercise jurisdiction over EquiGroomer based on its own activity directed to the forum. Defendant merely contends that it would be burdensome on Ms. Dauphin to litigate in Colorado, and that it would somehow be less burdensome for Plaintiff to litigate in Connecticut. Motion, pp. 7-8. This argument does not present a "compelling case." Indeed, courts have repeatedly held in cases involving online sales that it was reasonable to exercise jurisdiction, in part because modern technology makes it easier for a defendant to litigate out-of-state, and because states have a strong interest in adjudicating disputes that involve alleged infringement of a resident's intellectual property. *See Exact Mktg. v. Unique Sports Prods.,* No. 18-cv-00193-DB, 2018 U.S. Dist. LEXIS, at *6-7 (D. Utah July 23, 2018); *Leach*, 2017 U.S. Dist. LEXIS 33565, at *6-7; *Rainy Day Books,*

*Inc. v. Rainy Day Books & Café, LLC,* 186 F. Supp. 2d 1158, 1166-67 (D. Kan. 2002). All these reasons apply here.

### 2. Exercising Jurisdiction Would Not Offend Traditional Notions of Fair Play and Substantial Justice

When considering traditional notions of fair play and substantial justice, courts consider (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998).

Here, the burden to satisfy these factors is minimal in light of Plaintiff's interest in receiving convenient and effective relief, coupled with convenient air travel between Hartford, New York City or Boston and Denver. Plaintiff further notes that travel by Ms. Dauphin is unlikely to be required this year, and perhaps until trial is conducted in this action, as her deposition would occur in Connecticut where she resides. *See* Tipton Decl., ¶ 8. Defendant has failed to demonstrate how litigating this action in Colorado would be any more burdensome than another district, particularly as she has already engaged Colorado counsel and will shortly enter into the discovery period here in Colorado. *See* Walsworth Decl., ¶ 5, Ex. 4; ¶ 3, Ex. 2.

Regarding the second factor, Colorado has as much if not more of an interest than Connecticut in seeing that companies doing business in Colorado, and their intellectual property rights, are protected from unauthorized use. Colorado also has a genuine interest in ensuring Colorado consumers are not confused as a result of acts of infringement or unfair competition. *See* Colo. Rev. Stat. § 6-1-101 et seq. As stated, *supra*, Plaintiff has a strong interest in obtaining

convenient and effective relief from Colorado courts, as it has a significant presence here and sought the benefits of a Federally-protected trademark. *See* Tipton Decl., ¶¶ 3-4, 7, 8. The judicial system's interest in efficient resolution of controversies favors exercise of jurisdiction in Colorado, given the case was initially filed here in January and the case will proceed through the Rule 16 scheduling conference and exchange of written discovery prior to the completion of briefing on this Motion. Finally, as there are no alleged disadvantages in furthering substantive social policies, given this action involves four Federal causes of action, the fifth factor is not meaningful here. The majority of factors favor keeping the action in Colorado.

As the central thrust of the Complaint centers on consumer harm and confusion, Colorado is undoubtedly the location more greatly impacted by Defendant's conduct than Connecticut. In 2016, the American Horse Council ("AHC") conducted a survey across all 50 states to determine which states had the highest horse population. *See* Walsworth Decl., ¶ 7, Ex. 3. Colorado is ranked 31 spots above Connecticut (ranked 10th in comparison to 41st for Connecticut). *Id*. New Hampshire, another state where Defendant argues it has sufficient contacts, is 46th. *Id*. Other notable states in the western United States and their associated ranking include California (2), Oklahoma (4) and Washington (11), which are all significantly closer to Colorado than Connecticut. This data further supports traditional notions of fair play and substantial justice, since Defendant markets its products largely to equine owner and sells through equine-related distributors. *Id*., ¶¶ 8-9, Exs. 4, 5.

### 3. Defendant Has Not Shown That Jurisdiction is Unreasonable.

Defendant has not met its burden of showing that it would be constitutionally unreasonable for this Court to exercise jurisdiction here. The Motion relies heavily upon the Declaration of

13

Cheryl Dauphin to argue that Defendant does not have sufficient ties to Colorado. The Dauphin Declaration, however, obscures the revenue Defendant has obtained during its six years of doing business in Colorado by reporting the percentage of sale compared to total sales. Motion, fn 2. As stated, *supra*, the comparative amounts supplied by Ms. Dauphin's declaration is non sequitur.

Ms. Dauphin also claims that litigating the case in Colorado would present a burden on her business and her personally "if I were required to testify in this case in Colorado." *See* Dauphin Declaration [ECF 13-2], ¶ 9. Ms. Dauphin, however, provides no reason why a litigation here would be any more burdensome than one in Colorado, or explain why testifying at trial in Colorado would be more burdensome then in another forum. As stated, *supra*, modern technology makes it easier for a party who resides out-of-state. *See* Part II.A.1., *supra*.

In sum, these arguments do not present a "compelling case." Accordingly, Defendant's motion should be denied.

**B.     Venue in Colorado is Proper**

Defendant also challenges venue in Colorado for Count I of Plaintiff's Complaint. *See* Motion, pp. 9-10. To the contrary, SleekEZ has sufficiently established venue in Colorado by the allegations in its original Complaint, and has identified even more reasons why venue is appropriate in this response and accompanying declarations. Compl., ¶¶ 3, 6-7, 12-14, 16-17, 19-24; Tipton Decl., ¶¶ 7-8; Walsworth Decl., ¶¶ 2-4, 8-10. In *Monterey Research, LLC v. Broadcom Corp.*, No. W-21-CV-00542, 2022 LEXIS _____ (E.D. Tex. Feb 21, 2022), the court denied defendants' motion to transfer a multi-patent infringement action to the Northern District of California even though both parties had their principal places of business there. *Id*., *9-10. The principal reason for denying transfer was the convenience and availability of the majority of

14

identified witnesses, and the judicial efficiency would be achieved by maintaining the case in parallel with another litigation asserting different claims between the same parties. Here, the existence of three Lanham Act claims (Counts II-IV) and one state trademark claim (Count V) creates the same situation faced by the court in *Monterey Research* where it would be inefficient to transfer the patent claim, especially when the majority of witnesses and documents relating to the patent claim are located in Colorado.

Although the Motion does not evaluate the 28 U.S.C. § 1404(a) factors in great length, transferring the case to the District of Connecticut would not be more convenient than the present forum. For example, Plaintiff identified a clear majority of witnesses with discoverable information as residing in Colorado – no fewer than five fact witnesses and twelve distributors in total. *See* Tipton Decl., ¶ 3-6, 9-10 Numerous categories of potentially relevant documents and things are located in Colorado. *Id*. In contrast, only a single witness is known to reside in Connecticut (Ms. Dauphin), which cannot tip the scales in favor of transfer as requested by Defendant.

Plaintiff has a significant connection to this district, Defendant maintains multiple distributors in this district (both Internet and retail), and the convenience of the parties and the court will be best served if the action proceeds in this district. As Defendant has failed to meet its burden of showing why Count I should be transferred, its Motion should be denied.

### C. Plaintiff Properly Served The Complaint On Defendant

On January 20, 2022, SleekEZ (through counsel) sent a formal demand letter to Defendant enclosing a copy of its Complaint and exhibits. *See* Walsworth Decl., ¶ 2, Ex. 1. This letter was delivered to the address Defendant maintained with the Connecticut Secretary of State, 13 Menlo

15

Place, Glastonbury, CT 06033, which was identified after accessing Connecticut's business registration website, www.ct.gov shortly before the letter was sent. *Id*., ¶ 2. However, counsel for SleekEZ received a telephone call the following week from the person residing at 13 Menlo Place, who stated that Ms. Dauphin did not reside at the 13 Menlo Place address. *Id*., ¶ 3. Plaintiff confirmed during the call that no one associated with Defendant resided there. *Id*.

After conducting further business records searches to obtain a valid address of the registered agent for Defendant, Plaintiff uncovered additional references to the outdated Glastonbury address. *Id*., ¶ 4. Then, after searching records with the state of New Hampshire, Plaintiff learned that Defendant maintained a place of business in New Hampshire and, on March 17, 2022, properly served copies of the Complaint and summons in the above-captioned action. *Id*., ¶ 5. According to the laws of the state of New Hampshire, a defendant who maintains a business registration within the state may be served by personally delivering copies of the pertinent documents to the New Hampshire Secretary of State. NH Rev. Stat. § 510:4 (2015). Plaintiff utilized this procedure, via its process server Mr. Steven C. Byers. Walsworth Decl., ¶¶ 5-6, Ex. 2. Defendant timely engaged counsel and responded to the Complaint by filing the present Motion, which required entry of appearance by counsel for EquiGroomer. Service on Defendant is therefore sufficient.

### III. **CONCLUSION**

For these reasons, this Court should deny Defendant's Motion to Dismiss in its entirety. To the extent it would assist the Court in rendering a decision, Plaintiff respectfully requests oral argument in support of its response.

16

Dated:  4/28/2022               Respectfully Submitted,


                                By:  s/*Ian R. Walsworth*
                                     Ian R. Walsworth
                                     FISHERBROYLES LLP
                                     1400 16th Street, Suite 400
                                     16 Market Square
                                     Denver, Colorado 80202
                                     Phone: (303) 803-6158
                                     E-mail: Ian.Walsworth@fisherbroyles.com

                                     *Attorneys for Plaintiff SleekEZ, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April 2022, the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COMPLAINT was filed electronically using the Court's CM/ECF system which will send notification of the filing to all parties entered in this matter.

*Ian R. Walsworth*
Ian R. Walsworth